2011 UT 43

**SUMMIT WATER DISTRIBUTION COMPANY, Plaintiff, Petitioner, Appellee, and Cross–Appellant,**

v.

**UTAH STATE TAX COMMISSION & County Board Of Equalization of Summit County, State of Utah, Defendants, Respondents, Appellants, and Cross–Appellees.**

No. 20090921.

Supreme Court of Utah.

July 29, 2011.

---

1056

Scott M. Lilja, Nicole M. Deforge, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Timothy A. Bodily, Asst. Att'y Gen., David L. Thomas, Jami R. Brackin, Helen E. Strachan, Coalville, for defendants.

Chief Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 The Utah State Tax Commission and the Summit County Board of Equalization (collectively, Summit County) jointly appeal a district court decision interpreting article XIII, section 2 of the Utah Constitution to allow Summit Water Distribution Company (Summit Water) a tax exemption for an irrigation system used for nonagricultural purposes. The district court also held that taxation of Summit Water's water distribution facilities and the separate taxation of the real property owned by Summit Water's shareholders did not constitute double taxation. Summit Water cross-appeals the determination that no double taxation occurred. We conclude that the constitutional exemption encompasses the nonagricultural watering of lands and that no double taxation occurred. Accordingly, we affirm.

## BACKGROUND

¶ 2 Summit Water is a nonprofit mutual water company located in Summit County, Utah. It provides culinary grade water to properties within the county where, for the most part, there is no municipal water source available. A property owner must purchase a share from Summit Water in order to

receive water. Summit Water utilizes a system of pipelines, pumping stations, underground storage facilities, and well houses (collectively, the Distribution Facilities) to provide these properties with water. Without the water from Summit Water or another water company, these properties could not be developed for either commercial or residential purposes.

¶ 3 Once a share of water is purchased from Summit Water, the share becomes appurtenant to the shareholder's property and cannot be sold, transferred, or separated from the property. All parties concede that the availability of water to a parcel of property increases the value of that land because it is then suitable for commercial or residential development.

¶ 4 Summit Water's Class B shareholders are the residential and commercial property owners to whom Summit Water provides its water. Each shareholder owns a proportionate interest in the water rights of Summit Water, as well as a corresponding interest in the Distribution Facilities. In 2001, Summit Water provided culinary water to approximately 2,200 residential and commercial shareholders. On average, 51 percent of the water provided to Summit Water's Class B shareholders is used for the outdoor watering of lawns, shrubs, trees, and gardens; the remaining 49 percent is used for indoor domestic purposes.

¶ 5 In 2000, the Utah State Tax Commission (the Commission) audited Summit Water's annual property tax affidavit. The Commission concluded that the value of the Distribution Facilities was $5,178,588, which was substantially higher than Summit Water had reported on its affidavit. This higher value resulted in a tax increase of $57,114.65 for the 2000 tax year. Based on the Commission's audit, Summit County then assessed Summit Water for the back taxes owed for the years 1996 to 2000, which totaled $146,905.75. In all, Summit County assessed Summit Water $204,020.40 in additional taxes.

¶ 6 Summit Water appealed the assessment to the Summit County Board of Equalization (the Board). In this appeal, the Board determined that Summit Water had failed to meet its burden of establishing either that the valuation of its property was incorrect or that the taxation of the property was in some way illegal. The Board based its decision on its conclusion that Summit Water was not eligible for the constitutional tax exemption afforded to entities that own a water distribution system providing water for irrigating lands. The Board reasoned that the constitutional provision was tailored to exempt water distribution systems used for agricultural purposes, but not those used for nonagricultural purposes. The Board concluded that the water used by Summit Water's shareholders was nonagricultural. The Board also determined that there was no double taxation of Summit Water's property. Summit Water then appealed the Board's decision to the Commission, which affirmed the Board's decision. After the Commission granted Summit Water's appeal and request for a formal hearing, the Commission again determined that the constitutional exemption was limited to the agricultural use of water distribution systems and that no double taxation occurred.

¶ 7 Summit Water then filed an appeal with the district court to review the Commission's findings. The district court affirmed the Commission in part and reversed in part. The district court held that Summit Water was entitled to the constitutional exemption because the phrase "irrigating land" encompassed all artificial watering of land, including residential, commercial, and agricultural properties. The district court also held that Summit Water had not met its burden of proving that the Distribution Facilities were subjected to impermissible double taxation.

¶ 8 Summit County appeals the determination of the district court that the constitutional exemption at issue includes any artificial watering of land, regardless of whether the use is for agricultural purposes. Summit Water cross-appeals the determination of the district court that no double taxation of the Distribution Facilities occurred. We have jurisdiction pursuant to section 78A-3-102(3)(j) of the Utah Code.

## STANDARD OF REVIEW

■ ¶ 9 "Because this appeal concerns ... interpretation[s] of the Utah Constitution, we

review the district court's determination for correctness, giving no deference to its legal conclusions." *Provo City v. Ivie*, 2004 UT 30, ¶ 7, 94 P.3d 206.

## ANALYSIS

¶ 10 We begin with the district court's determination that the phrase "irrigating land" contained in article XIII, section 2 of the Utah Constitution included the artificial watering of nonagricultural lands. We then address whether the district court was correct in determining that the taxation of the Distribution Facilities did not constitute double taxation.

## I. "IRRIGATING LAND" INCLUDES THE ARTIFICIAL WATERING OF LAND FOR NONAGRICULTURAL PURPOSES

¶ 11 Summit County argues that the district court erred in concluding that article XIII, section 2 of the Utah Constitution permitted a tax exemption for Summit Water's Distribution Facilities, which were used for the artificial watering of nonagricultural lands. The relevant language, which was in effect from 1982 until 2002,[1] reads as follows:

> Water rights, ditches, canals, reservoirs, power plants, pumping plants, transmission lines, pipes and flumes owned and used by individuals or corporations for *irrigating land* within the state owned by such individuals or corporations, or the individual members thereof, shall be exempted from taxation to the extent that they shall be owned and used for such purposes.

UTAH CONST. art. XIII, § 2, cl. 5 (emphasis added) (amended 2003). The district court determined that "irrigating land" encompasses all artificial watering of lands, regardless of whether the use is for agricultural purposes. Summit County argues that the framers of the Utah Constitution did not intend such a broad interpretation of "irrigating land." We hold that the phrase "irrigating land," as intended by the framers and as commonly used at the time the constitution was enacted, includes all artificial watering of land and is not limited to the artificial watering of land for agricultural purposes.

¶ 12 "[O]ur starting point in interpreting a constitutional provision is the textual language itself." *Grand Cnty. v. Emery Cnty.*, 2002 UT 57, ¶ 29, 52 P.3d 1148. Although we begin with the plain language, "we recognize that constitutional 'language ... is to be read not as barren words found in a dictionary but as symbols of historic experience illumined by the presuppositions of those who employed them.'" *Am. Bush v. City of S. Salt Lake*, 2006 UT 40, ¶ 10, 140 P.3d 1235 (alteration in original) (quoting *Dennis v. United States*, 341 U.S. 494, 523, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (Frankfurter, J., concurring)). "We thus inform our textual interpretation with historical evidence of the framers' intent." *Id.* Further, "in interpreting the Utah Constitution, prior case law guides us to analyze its text, historical evidence of the state of the law when it was drafted, and Utah's particular traditions at the time of drafting." *Id.* ¶ 12.

¶ 13 An examination of the record of the constitutional convention reveals no discussion of the constitutional provision at issue.[2] The notes do contain some discussion of irrigation with respect to the use of eminent domain, but this discussion is not conclusive as to whether the term encompassed only agricultural uses. For example, in one in-

---

1. In the 2002 general election, part of article XIII was repealed, reenacted, and renumbered to include the same tax exemption in substantially similar form. *See* UTAH CONST. art. XIII, § 3, cl. 1(i). Subsequently, the newly renumbered section 3 was amended in 2011 to include the same exemption "if owned by a nonprofit entity and used within the State to irrigate land [or] provide domestic water." *See id.* art. XIII, § 3, cl. 1(j)(i). Our decision in this case is restricted to the version of the constitutional exemption in effect during the taxation years at issue.

2. The constitutional provision in the original Utah Constitution provided that "[d]itches, canals, and flumes owned and used by individuals or corporations for irrigating lands owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed so long as they shall be owned and used exclusively for such purpose." UTAH CONST., art. XIII, § 3 (amended 1900). All subsequent versions of this provision of the Utah Constitution have included similar language.

stance a delegate proposed a provision to include "irrigation of agricultural lands" as a purpose permitting the use of eminent domain, which suggests that the term "irrigation" alone was not otherwise specific to agricultural uses. *See* 1 OFFICIAL REPORT OF THE PROCEEDINGS AND DEBATES OF THE CONVENTION 218 (Salt Lake City, Star Printing Co. 1898) ("All persons and corporations shall have the right of way across public, private, and corporate lands ... for the irrigation of agricultural lands ... upon payment of just compensation."). However, a separate discussion during the convention shows another delegate conflating irrigation with agriculture. *See* 2 *id.* at 1536 ("Mr. KIMBALL (Weber)[:] ... Is not irrigation one of the prime necessities of the Territory? Mr. THATCHER[:] I think so, and equally so in mining. I am just as favorable to the provisions of mines as I am to agriculture."). Thus, the lack of any discussion of the provision at issue, coupled with the mixed treatment of the term "irrigation" [3] in other contexts during the convention, offers no guidance as to whether the framers intended to limit the tax exemption at issue to strictly agricultural uses of irrigation.

¶ 14 In turning to the common usage of the phrase "irrigate" at the time the Utah Constitution was enacted, it appears that "irrigating land" includes both agricultural and nonagricultural artificial watering of land. *The Universal Dictionary of the English Language*, published shortly after the 1896 adoption of the Utah Constitution, defines the term "irrigate" as: "1. To water, to wet; to fill with a fluid or liquid; 2. To moisten; 3. To water, as land, by causing a stream to flow and spread over it." 3 UNIVERSAL DICTIONARY OF THE ENGLISH LANGUAGE 2741 (Robert Hunter & Charles Morris eds., N.Y.C., Peter Fenelon Collier 1899). Similarly, the 1895 edition of *An American Dictionary of the English Language* defines "irrigate" as: "1. To water; to wet; to bedew; 2. To water, as land, by causing a stream to flow upon it and spread over it." NOAH WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE 626 (Chauncey A. Goodrich ed., Chi., Donohue & Henneberry rev.

ed. 1895). Absent from either definition is any indication that "irrigate" strictly pertains to agriculture.

¶ 15 In contrast to the meaning of "irrigate," both dictionaries provide definitions for the noun "irrigation" in an agricultural context. *See* 3 UNIVERSAL DICTIONARY OF THE ENGLISH LANGUAGE, *supra*, at 2741 (defining irrigation as *"Agric.:* The act of watering land by causing a stream to flow and spread over it"); *see also* WEBSTER, *supra*, at 626 (defining irrigation as "[i]n *agriculture*, the operation of causing water to flow over lands, for nourishing plants"). But the constitutional language at issue does not use the term "irrigation." *Cf. Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994) ("A cardinal rule of statutory construction is that courts are not to infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and the court has no power to rewrite the statute to conform to an intention not expressed."). Although these definitions explain the meaning of the term *within* the agricultural context, they do not limit the term to *only* that context.

¶ 16 We may consider treatises from the time of the Utah Constitution to further inform our understanding of constitutional language. Summit County included excerpts from two treatises in its briefs before this court in an effort to bolster its claim that irrigation was strictly limited to an agricultural context. *See* CHARLES HILLMAN BROUGH, IRRIGATION IN UTAH 41, 108–10 (Balt., Johns Hopkins Press 1898); ELWOOD MEAD, IRRIGATION INSTITUTIONS 9, 220, 223 (1910). Summit County is correct that both excerpts describe the beneficial use of irrigation in the arid state of Utah as it pertains to agriculture. It is no surprise, however, that treatises focused on agriculture would limit their discussion of irrigation to its agricultural context. As a result, we do not think that these treatises indicate that "irrigating land" was limited only to agriculture.

¶ 17 Furthermore, case law from the relevant period suggests that the common mean-

---

3. We note that the discussion during the constitutional convention used the term "irrigation" rather than "irrigating," a difference we find significant as discussed below. *See infra* ¶ 15.

ing of the term "irrigate" included nonagricultural purposes. A few years before the Utah Constitution was enacted, the Supreme Court of the Territory of Utah was asked to determine whether a plaintiff could receive damages resulting from an injunction, issued in error, that prohibited her from using water from an adjacent creek. *Rohwer v. Chadwick*, 7 Utah 385, 26 P. 1116, 1116 (1891). The court defined "irrigating purposes" as including a plaintiff's use of diverted water "to irrigate her meadow land and her crops and garden and orchard and shadetrees." *Id.* Although the court was not evaluating the constitutional language at issue, the description of the use of water to include irrigating meadow land and shade-trees suggests a common understanding that irrigating land was not limited to agricultural purposes.

¶ 18 Summit County argues that this court, in *Holliday Water Co. v. Lambourne*, 24 Utah 2d 97, 466 P.2d 371 (1970), held that "irrigating lands"[4] was limited to the watering of land for agricultural purposes. We disagree. In that case, the water company argued that the constitutional exemption should include "the artificial diversion of water for any useful purpose." *Id.* at 372. The language in article XIII, section 2 at the time of *Holliday Water* allowed the exemption only to companies that used the irrigation systems " 'as long as they shall be owned and used *exclusively* for' " irrigating land. *Id.* (emphasis added) (quoting Utah Const. art. XIII, § 2, cl. 5 (amended 1983)). But in *Holliday Water*, the court did not need to reach the definition of "irrigating land" because the water company had conceded that the purpose of its irrigation system was to furnish culinary water to its shareholders, not for irrigating land. *Id.* Under the constitutional exemption at that time, *any* use of a company's water distribution system to distribute culinary water for *nonirrigation* pur-

poses foreclosed the possibility of the company being eligible for the tax exemption.

¶ 19 Furthermore, the definition of "irrigation" referenced in *Holliday Water* is not limited to agricultural use. Summit County's argument that "irrigating land" is limited only to the artificial watering of land for agricultural purposes ignores the full definition of irrigation referenced by the trial court, and upheld by this court, in *Holliday Water*: "[t]he ordinary and popular conception [of irrigation] denotes the application of water to land for the production of crops and embraces *all artificial watering of land.*" *Id.* at 372–73 (emphasis added) (internal quotation marks omitted).

¶ 20 Based on the lack of evidence from the constitutional convention, the common definition of the term "irrigate" at the time the Utah Constitution was enacted, and the definition of "irrigate" suggested from case law around that time, we hold that the term "irrigate" in article XIII, section 2 includes both agricultural and nonagricultural artificial watering of land.[5] We therefore affirm the district court's determination that the constitutional exemption applied to the extent that Summit Water used its Distribution Facilities to provide water for the artificial watering of land.

## II. SUMMIT WATER WAS NOT SUBJECTED TO DOUBLE TAXATION

¶ 21 Summit Water argued below and on appeal that it has been taxed twice in violation of the equal property tax clause of article XIII, section 2 of the Utah Constitution. It asserts that the Commission imposed a tax on the value of the Distribution Facilities in two ways: (1) directly on Summit Water; and (2) indirectly on Summit Water's shareholders, who pay property tax-

---

4. The constitutional language at issue in *Holliday Water* used the phrase "irrigating lands," which was subsequently changed to "irrigating land" in the similar section currently at issue. For the sake of consistency, the term "irrigating land" will be used throughout this opinion.

5. We note that our holding appears to be consistent with the counties' historic approach to taxa-

tion with respect to irrigation. The sponsor of the 2010 constitutional amendment noted that only six counties had recently started to assess this tax and that county assessors were seeking clarity on this issue. *E.g.*, Recording of Utah House Floor Debates, H.J.R. 002, 58th Leg., Gen. Sess. (Feb. 9, 2010) (statement of Rep. Painter).

es on the increase in value of their real property due to the availability of water (the water-added value). We disagree that this taxation violates article XIII, section 2.

¶ 22 During the taxation years at issue, the Utah Constitution provided in relevant part that "[a]ll tangible property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed at a uniform and equal rate in proportion to its value, to be ascertained as provided by law." UTAH CONST. art. XIII, § 2, cl. 1 (amended 2003).[6] This provision "of the Constitution in plain and explicit terms provide[s] that there shall be a uniform rate of taxation in this state so that every person, company, and corporation will be compelled to bear" their equal share of taxes on property. *McCornick & Co. v. Bassett*, 49 Utah 444, 164 P. 852, 854 (1917).

¶ 23 We have held that double taxation occurs and violates the equal property tax clause where

> property is once assessed for general taxes according to its value and at the same rate as other property subject to the same tax is assessed, [and] it [is] again ... taxed in some other way when the burden of both taxes falls on the same person, and while other property subject to the same tax is assessed but once.

*Id.* Thus, a party must establish three elements to show that it has been subjected to double taxation: (1) the tax must fall on the same property, (2) the burden of the tax must fall on the same person, and (3) other similarly situated property must be taxed only once. We evaluate each of these elements in turn.

#### A. The Same Property Is Not Taxed Twice

¶ 24 Summit Water's Distribution Facilities are taxed as improvements to real property. The property taxes on its real estate and the improvements to its real estate are paid by Summit Water. Summit Water alleges that taxation on the water-added value

of the shareholder's properties, which the Distribution Facilities serve, is an additional tax on the same property. We disagree.

¶ 25 The Distribution Facilities are, and are treated as, different property from the real property that the Distribution Facilities serve. A tax on the water-added value is different from a tax on the water facilities of a company that provides the water. In the former case, the tax targets the water-added value directly. In the latter case, the tax targets the value of the physical instruments, infrastructure, and equipment used to transport the water. The tax is not on the same property and, therefore, Summit Water fails to satisfy this element.

#### B. The Burden of Both Taxes Does Not Fall on the Same Person

¶ 26 Even if we were to assume that the same property was taxed twice, Summit Water has not shown that the burden of both taxes falls on the same person. It is true that the property owners, who pay increased real property taxes because the availability of water enhances their property values, happen to own proportionate shares in the water company that provides them with water. But Summit Water exists as a nonprofit mutual water company. The tax on the improvements that Summit Water uses to provide its shareholders with water is the responsibility of Summit Water. Likewise, the tax on real property that an individual shareholder of Summit Water owns is the responsibility of that owner. These are not the same person and, therefore, Summit Water cannot show that the same person is burdened by both taxes.

#### C. Summit Water Has Not Shown that Similarly Situated Properties Have Been Taxed Only Once

¶ 27 Summit Water has failed to show that any other similarly situated property has been taxed only once. Summit Water has not pointed to any other specific occurrences where another nonprofit mutual water company, whose shareholders are real property

---

6. In the 2002 general election, article XIII, section 2 was repealed and reenacted. The relevant language in effect during the taxation years at issue is substantially similar to the current amended version. *See* UTAH CONST. art. XIII, § 2, cl. 1.

owners that the water company serves, is taxed once on its water distribution facilities, while the shareholders are not taxed on the water-added value. Likewise, Summit Water has not pointed to any other occurrence where a nonprofit mutual water company is not taxed on its water distribution facilities but its shareholders pay property taxes on the water-added value.

¶ 28 In sum, Summit Water has failed to establish any of the three elements necessary to show unconstitutional double taxation. It has not shown that the Distribution Facilities were taxed twice, that the burden of both taxes fell on Summit Water, or that there are similarly situated properties that have been taxed only once. We therefore hold that Summit Water was not subjected to double taxation.

## CONCLUSION

¶ 29 During the years at issue in this appeal, Summit Water was entitled to the tax exemption afforded by article XIII, section 2 of the Utah Constitution as it existed at that time. Summit Water's Distribution Facilities fell within this exemption because they were used to irrigate land, irrespective of agricultural or nonagricultural use, and should have been exempt from taxation to the extent they were used for that purpose. We therefore affirm the district court's interpretation of the Utah Constitution.

¶ 30 Moreover, double taxation does not occur where the owners of real property pay higher property taxes as a result of the availability of water by a water distribution system that is separately taxed against a nonprofit mutual water company, even though the property owners may be shareholders of the company. Summit Water failed to establish any of the elements necessary to show double taxation and, therefore, was not subjected to double taxation.

¶ 31 Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Justice LEE concur in Chief Justice DURHAM's opinion.