Chief Justice DURRANT,
opinion of the Court:
. Introduction
1 This is a tax case that comes before us on appeal from a formal decision of the Utah State Tax Commission (Commission). Utah law imposes a severance tax on owners of oil and gas interests. The tax rate an owner must pay depends on the fair market value of the owner's interest. The question presented in this case concerns how the value of such an interest is to be calculated. Petitioners Anadarko Petroleum Corporation and Kerr-McGee Oil & Gas Onshore L.P. (collectively Anadarko) argue that the Commission improperly disallowed deductions they made for tax-exempt federal, state, and Indian tribe royalty interests. Based on the plain meaning and structure of the severance tax statute, we agree and reverse the Commission's determination.
Background
T2 The facts of this case are not in dispute. Anadarko acquired Kerr-McGee in 2006. From January 1, 2008, to December 31, 2011, Anadarko operated oil and gas wells in Carbon and Uintah counties Anadarko filed severance tax returns during this period. On September 2, 2010, the Auditing Division of the Commission sent Anadarko a preliminary notice of its proposed tax liability. After correspondence between the parties, the Auditing Division issued two notices to Anadarko on November 10, 2010. The first notice informed Anadarko of a deficiency in its 2009 severance tax and assessed $10,118.54 in additional taxes and interest. The second notice informed Kerr-McGee that its claimed 2009 refund of $606,876.65 was being reduced by $111,654.09, resulting in a refund of $494,722.56.[1] Anadarko conceded that $1,509.83 of the $10,118.84 deficiency was properly assessed and that *650 $10,185.42 of the $111,654.09 refund was properly withheld, but it disputed the remaining actions of the Commission.
13 Anadarko challenged the disputed amounts by filing a petition for redetermination of tax with the Commission. Both Ana-darko and the Auditing Division filed motions for summary judgment, and the Commission held a hearing on the eross-motions for summary judgment. The issue before the Commission was whether the Auditing Division had applied the correct tax rate, which involves the application of a somewhat complicated formula outlined in Utah Code sections 59-5-102 and 59-5-103.1.
T 4 The formula first requires the taxpayer to calculate the fair market value of the interest in oil or gas according to a sale in an "arm's-length contract" or by "comparison to other sales of oil or gas." [2] Second, permissible deductions are subtracted from that amount to yield the net taxable value.[3] Third, the Commission divides the taxable value by the amount of oil or gas produced. For natural gas, the unit of measurement is an MCF, or one-thousand cubic feet of natural gas.[4] So for Anadarko's natural gas interests, the third step yielded the taxable value per MCF (unit price). Finally, to determine the tax rate, the Commission caleu-lates the percentage of the unit price up to $1.50 and then the percentage above $1.50. The percentage of the unit price up to $1.50 is the percentage of the taxable value assessed at a three-percent tax rate. The percentage of the unit price above $1.50 is the percentage of the taxable value assessed at a five-percent tax rate.[5]
15 We offer a brief example by way of illustration. In one of the calculations in this case, the net taxable value of 24,874 MCFs was $66,478. The net taxable value per MCF was therefore $2.67 (66,478/24,874 = 2.67). Fifty-six percent of the unit price is below $1.50 (1.50/2.67 = 0.56) and the remaining forty-four percent is above $1.50 ((2.67-1.50)/2.67 = 0.44). Therefore, of the $66,478 in taxable value, fifty-six percent is assessed at three percent (66,478"0.56 = 37,-227.68), and forty-four percent is assessed at five percent (66,478*0.44 = 29,250.82).
16 The dispute before the Commission concerned step two of this formula-what deductions are permitted under the severance tax statute in the unit price calculation. Anadarko argued that because the statute exempts federal, state, and Indian tribe royalty interests from the severance tax, it also permits taxpayers to deduct such interests from the net taxable value in calculating the per unit price. The Auditing Division maintained that the unit price should be calculated "based on the prices at which the gas was sold, prior to the point when the producer paid the exempt royalties."
7 On December 18, 2011, the Commission determined there was no genuine issue of material fact and granted summary judgment in favor of the Auditing Division. The Commission agreed with the Auditing Division's calculation of price per MCF, relying on the plain language of Utah Code section 59-5-108.1. The Commission also acknowledged that the exempt entities' interests-the interests of federal and state governments, and Indian tribes-are not subject to the severance tax but must be included in the calculation of value under Utah Code sections 59-5-102 and -108.1. The Commission concluded that "[tlaxable value is established prior to being allocated between the two tax rates" and that the Auditing Division's methodology did not increase Anadarko's taxable value. Anadarko filed a request for reconsideration on January 2, 2013, which the Commission denied. Anadarko timely appealed. We have jurisdiction to review final orders of the Utah State Tax Commission under Utah Code section 78A-3-102(8)(e)(j).
Standard of Review
T8 When reviewing formal adjudicative proceedings of the Utah State Tax Commission, we "grant the commission deference *651 concerning its written findings of fact, applying a substantial evidence standard," and we review the Commission's conclusions of law for correctness, granting the Commission's legal analysis no deference.[6]
Analysis
19 Anadarko first argues that the Commission's decision is inconsistent with the terms of the Utah Severance Tax Act. It contends that the Act's plain language requires the exclusion of any federal, state, or Indian tribe interests from the calculation of value used to determine severance tax Hability. And Anadarko maintains that reading the statute any other way creates two inconsistent meanings of "value" within sections 59-5-102 and 59-5-108.1. Anadarko also argues that reading the statute to include exempt federal interests in the unit price caleu-lation violates the United States Constitution by imposing a tax on the federal government.
110 We agree with Anadarko that the plain meaning and structure of the severance tax statute categorically excludes federal, state, and Indian tribe interests from the unit price calculation. Accordingly, we do not reach the constitutional questions raised in Anadarko's brief.[7]
T11 When interpreting a statute, we look first to the plain and ordinary meaning of its terms.[8] But we do not interpret statutory provisions in isolation. We also construe terms "in each part or section" of a statute "in connection with every other part or section so as to produce a harmonious whole."[9] The meaning of seemingly unclear or ambiguous provisions is often clear when read in context of the entire statute.[10]
112 Here, we acknowledge that the Commission's reading of the severance tax statute is plausible if section 59-5-108.1 is read in isolation. But when read in harmony with section 59-5-102(1)(b), we conclude that the plain language and structure of the statute categorically excludes federal and Indian tribe interests from the value calculation set forth in section 59-5-108.1.
1 13 Section 59-5-102(1)(a) imposes a severance tax on any "person owning an interest in oil or gas produced from a well in the state." The tax rate depends on the fair market value of a producer's oil or gas interest, as "determined under Section 59-5-103.1." That section allows anyone subject to the severance tax to deduct processing and transportation costs before "determining the fair market value of oil or gas," but it makes no mention of exempt royalty interests.
{14 The Commission concluded that because section 108.1 does not include a deduction for federal, state, or Indian tribe royalty interests, the statute unambiguously dictates that the calculation of value does not permit the deduction of such interests,. But this conclusion overlooks the fact that subsection 102(1)(a)-the provision that imposes the severance tax and sets forth how the rate is to be calculated under section 108.1-is, by its own terms, "[slubject to Subsection [102](1)(b)." And that subsection specifically excludes exempt interests from consideration under the entire section:
This section [59-5-102] applies to an interest in oil or gas produced from a well in the state or in proceeds of the production of oil or gas produced from a well in the state except for: (i) an interest of the United States ...; (H) an interest of the state or a political subdivision ...; or (ii) an interest of an Indian or Indian Tribe.... [11]
In other words, no provision in section 59-5-102 applies to "an interest in oil or gas" owned by any of the listed entities. This excludes the interests of these entities not *652 just from the imposition of a severance tax, but from any consideration in calculating the "value" of an interest under section 59-5-102(1)(a) as determined by section 59-5 108.1. Accordingly, we conclude that Anadar-ko should be permitted to deduct these interests in calculating the unit price used to determine its tax rate.
{ 15 The dissent argues that section 59-5-102 "says nothing of deducting [exempt] interests for purposes of calculating fair market value." [12] And it focuses on the fact that section 59-5-108.1 "specifically enumerates the deductions that are permitted at that stage-deductions for processing and transportation costs"-without including "royalty interest deductions." [13] Because exempt royalty interests are not listed as permissible deductions, the dissent would hold that the plain text of section 59-5-108.1 unambiguously prohibits the deduction of such interests in calculating the unit price.
{16 As a general proposition, the dissent is correct that we " 'give effect to omissions in the statutory language by presuming all omissions to be purposeful!" [14] But in this case, the dissent's application of that canon begs the question of whether in fact the omission it identifies is purposeful. If, as we hold today, section 59-5-102(1)(b) excludes exempted royalty interests altogether from both the imposition of the severance tax and the value calculation it references in section 59-5-108.1, including an additional deduction for such interests in section 59-5-103.1 would have been entirely superfluous.
{17 And moreover, the subsection 102(1)(b) exclusion is not a "deduction" in the sense of a cost or expense to be subtracted from the fair market value of an oil or gas interest. Rather, it specifies what types of interests are subject to taxation and section 108.1's valuation formula in the first place. So it makes perfect sense for the Legislature to have provided that exclusion separately. For these reasons, the Legislature's failure to include a specific deduction for exempt royalty interests in section 108.1 does not tell us anything about whether it intended to allow taxpayers to deduct them in the severance-tax-rate calculation.
Conclusion
1 18 We hold that Utah Code sections 59-5-102 and -108.1 categorically exclude any federal, state, and Indian tribe interests from the net taxable value of an oil or gas interest for purposes of calculating the applicable tax rate. The Commission erred in concluding otherwise. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
Associate Chief Justice NEHRING authored a dissenting opinion. .

. A small portion of these discrepancies in tax liability was due to the calculation of a stripper well exception. The Commission granted summary judgment in favor of Anadarko on this issue, and it is not before us on appeal.

. See Utax Cope § 59-5-103.1(1)(a).

. Id. § 59-5-103.1(1)(b)

. See id. § 59-5-102(2)(b); What Is Natural Gas?, Am. Gas Ass'n, http://www.aga.org/what-natural-gas (last visited January 26, 2015).

. Urax Cope § 59-5-102(2)(b).

. Uta Cope § 59-1-610(1).

. See Bailey v. Bayles, 2002 UT 58, ¶ 26, 52 P.3d 1158 ("[It is fundamental that constitutional issues should be avoided if the case can be properly decided on non-constitutional grounds." (internal quotation marks omitted)).

. Olsen v. Eagle Mountain City, 2011 UT 10, ¶ 9, 248 P.3d 465.

. State v. Watkins, 2013 UT 28, ¶ 29, 309 P.3d 209 (internal quotation marks omitted).

. See Olsen, 2011 UT 10, ¶ 9, 248 P.3d 465.

. Utax Cope § 59-5-102(1)(b) (emphasis added).

. Infra ¶ 26.

. Infra ¶ 26.

. Infra ¶ 26 (quoting Marion Energy, Inc. v. KFJ Ranch P'ship, 2011 UT 50, ¶ 14, 267 P.3d 863).