*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 1**

**FILED
UTAH APPELLATE COURTS
JANUARY 5, 2016**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

RENT-A-CENTER WEST, INC.,
*Petitioner,*

*v.*

UTAH STATE TAX COMMISSION
*Respondent.*

No. 20140129
Filed January 5, 2016

Original Proceeding in this Court

Attorneys:

Steven P. Young, Nathan R. Runyan, Salt Lake City,
for petitioner

Sean D. Reyes, Att'y Gen., Gale K. Francis, Asst. Att'y Gen.,
Salt Lake City, for respondent

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
and JUSTICE HIMONAS joined.

Due to her resignation from this court, JUSTICE PARRISH
did not participate herein.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1 Rent-A-Center West, Inc. appeals the Utah State Tax Commission's decision declaring Rent-A-Center's optional liability waiver fee subject to Utah sales and use tax. We reverse.

## BACKGROUND

¶2 Rent-A-Center leases and sells a variety of consumer goods, ranging from smartphones and televisions to couches and washing machines. Rent-A-Center leases its products through rental agreements describing the property, the payment amount, and the

number of payments. Customers may choose to make payments weekly, semi-monthly, or monthly.

¶3      Customers acquire ownership of the product once they have paid the full value of the property. Until the final payment is made, Rent-A-Center retains ownership.

¶4      The rental agreement also contains a provision allowing customers to accept or decline participation in an optional liability waiver program. Customers who agree to participate in the liability waiver program pay an extra fee—calculated as 7.5 percent of the rental payment—each pay period. In return for paying the liability waiver fee, customers are not required to reimburse Rent-A-Center for any loss if the product is damaged or destroyed due to lightning, fire, smoke, windstorm, theft, or flood. If a customer elects not to pay the liability waiver fee or is behind on rental payments, the customer must reimburse Rent-A-Center for the fair market value of the item, even if an enumerated calamity occurs. The liability waiver fee does not entitle customers to repairs or replacement items.

¶5      Participation in the liability waiver program does not affect the amount owed for the rental payments. Both the rental payment and the liability waiver fee are due to Rent-A-Center at the same time. On the customers' receipts, Rent-A-Center separately itemizes the amount paid for the rental payment and the amount paid for the liability waiver fee. Customers may cancel the liability waiver payment at any time without any effect on the rental or the rental payment. Additionally, Rent-A-Center offers an early purchase program wherein the customer may make a lump-sum payment ahead of schedule, and this option does not require payment of the liability waiver fee.

¶6      Rent-A-Center charges sales tax on the rental payment but not on the liability waiver fee. The Utah State Tax Commission conducted an audit of Rent-A-Center for 2007–2009 and discovered this practice. On March 23, 2010, the Commission issued a statutory notice to Rent-A-Center, imposing taxes and interest on the amounts Rent-A-Center charged for the liability waiver fee, totaling $147,364.35.

¶7      Rent-A-Center contested the audit results in a formal hearing before the Commission. The Commission found the liability waiver fee taxable because (1) Utah Code section 59-12-103(1)(k) taxes "amounts paid or charged for leases or rentals of tangible personal property," and (2) the liability waiver "fee is part of the total rental 'purchase price' and 'sales price' as defined in Section 59-12-102(99)."

¶8    Rent-A-Center appealed. We have jurisdiction to review the Commission's decision under Utah Code section 78A-3-102(3)(e)(ii).

## STANDARD OF REVIEW

¶9    This court's review of the Commission's decision is governed by Utah Code section 59-1-610. We "grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review; and . . . [grant] no deference concerning its conclusions of law, applying a correction of error standard." *Id.*; *see also Anadarko Petroleum Corp. v. Utah State Tax Comm'n*, 2015 UT 25, ¶ 8, 345 P.3d 648. Because we decide this case purely on issues of law, we review the Commission's decision for correctness, granting no deference.

## ANALYSIS

### I. THE LIABILITY WAIVER FEE IS NOT SUBJECT TO SALES AND USE TAX UNDER THE PLAIN TEXT OF THE UTAH TAX CODE

¶10    The issue we are asked to decide is straightforward: is Rent-A-Center's liability waiver fee subject to sales and use tax under the Utah Tax Code? The relevant portion of the statute is Utah Code section 59-12-103(1)(k), which imposes sales tax on "amounts paid or charged for leases or rentals of tangible personal property if within this state the tangible personal property is: (i) stored; (ii) used; or (iii) otherwise consumed."[1]

¶11    The Commission argues that the statute, in conjunction with its own administrative regulation, unambiguously requires taxation of the liability waiver fee because the fee is charged "*in connection with* the rental of tangible personal property." (emphasis added). The Commission considered the following facts to be important in finding the liability waiver fee taxable: (1) the liability waiver provision is part of the rental agreement, (2) the customer must sign both the rental agreement and the liability waiver document, (3) the customer must be current on rental payments as well as liability waiver fee payments in order for the waiver to be effective, (4) the customer pays the rental payment and the liability waiver fee at the same time, (5) the liability waiver fee is a set

---

[1] Because we hold that these fees are not included in Utah Code section 59-12-103(1)(k)—"amounts paid or charged for leases or rentals of tangible personal property"—it is unnecessary to discuss whether these fees could be encompassed within the definitions of "purchase price" and "sales price" found in section 59-12-102(99).

percentage of the rental payment, and (6) the liability waiver program is not available absent a rental.

¶12 We examine first the import of "paid for" in the statutory language of "amounts paid . . . for leases or rentals of tangible personal property." We conclude that the liability waiver fee is not contemplated by that language. Second, we examine whether the Commission's administrative regulation is in harmony with the statute and determine that it impermissibly broadens the statutory coverage and is therefore invalid.

*A. The Liability Waiver Fee Is Not an Amount "Paid for" the Lease or*
*Rental of Tangible Personal Property Because It Does Not Affect*
*the Possession, Use, or Operation of the Rental Property*

¶13 When we interpret a statute, "our primary goal is to evince the true intent and purpose of the Legislature." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (citation omitted). The best indication of the legislature's intent is the plain and ordinary meaning of the statute's terms. *Anadarko Petroleum Corp. v. Utah State Tax Comm'n*, 2015 UT 25, ¶ 24, 345 P.3d 648.

¶14 Utah Code section 59-12-103(1)(k) imposes a tax on "amounts paid or charged for leases or rentals of tangible personal property." The pertinent question then is what is meant by "paid or charged for"?

¶15 "In determining the ordinary meaning of nontechnical terms of a statute, our 'starting point' is the dictionary" because it "is useful in cataloging a range of possible meanings that a statutory term may bear." *State v. Canton*, 2013 UT 44, ¶ 13, 308 P.3d 517 (citation omitted). It is merely a starting point, however, because these possible definitions "will often fail to dictate 'what meaning a word *must* bear in a particular context.'" *Hi-Country Prop. Rights Grp. v. Emmer*, 2013 UT 33, ¶ 19, 304 P.3d 851 (citation omitted). Where this is the case, we must identify the meaning of the statutory language "based on other indicators of meaning evident in the 'context of the statute (including, particularly, the structure and language of the statutory scheme).'" *Id.* (citation omitted).

¶16 The Oxford English Dictionary defines "pay for" in quid pro quo terms—as giving "money or other equivalent for goods or services." OXFORD ENGLISH DICTIONARY, www.oed.com (last visited Dec. 29, 2015). This definition indicates that it is not enough for a payment to merely "concern" a good or service; it must go to the purpose or aim of the transaction. We conclude that the essence of the transaction is the exchange of money for the right to possess, use, or operate the product that is the subject of the rental. *Cf.* UTAH

ADMIN. CODE R865-19S-32(2) ("When a lessee has the right to possession, operation, or use of tangible personal property, the tax applies . . . pursuant to the lease agreement . . . .").

¶17    This interpretation is consistent with another subsection of section 103 that taxes "amounts paid or charged for services for repairs or renovations of tangible personal property." UTAH CODE § 59-12-103(1)(g). Services for repairs or renovations are taxable because these services are to restore or extend the product's life and thereby affect its possession, use, and operation.

¶18    The Commission focused on six factual findings in rendering its decision. *Supra* ¶ 11. Although the findings show a connection between the rental payments and the liability waiver fee—the liability waiver provision is signed at the same time as the rental agreement, payments are made on the same schedule, etc.—none of these findings illustrate why this fee is paid *for* the rental property. The liability waiver fee does not have any effect on the customer's possession, use, or operation of the property. It does not entitle the customer to repairs or replacement items. Instead, the liability waiver fee simply secures Rent-A-Center's promise to waive any claims it would otherwise have against the customer if damage or destruction occurs.[2]

¶19    The Commission argues that other states tax liability waivers or similar fees. But those states have statutes with language much broader than Utah's. Louisiana, for example, taxes "the *gross proceeds derived from* the lease or rental of tangible personal property." LA. STAT. ANN. § 47:302(B)(1) (2015) (emphasis added); *Rent-A-Center. E., Inc. v. Lincoln Par. Sales & Use Tax Comm'n*, 60 So. 3d 95, 98–99 (La. Ct. App. 2011) (deeming an identical liability waiver fee taxable under Louisiana's tax code). Kentucky taxes "gross receipts," which include "services, for which tangible personal property . . . [is] sold, leased, or rented." KY. REV. STAT. ANN. § 139.010(12)(a) (West 2015); KY. DEP'T OF REVENUE, KY. SALES TAX FACTS (June 2011), http://goo.gl/VLQagV.

¶20    The plain language of Utah's statute does not tax amounts "derived from" the rental of tangible personal property, nor does it specifically include "services, for which tangible personal property"

---

[2] We expressly reject Rent-A-Center's argument that because this fee is optional and separately itemized it is not taxable. So long as the amount paid for the product or service affects the possession, use, or operation of a tangible good, it would be taxable under 103(1)(k), regardless of whether the fee is optional or of the location of the charge in the contract or billing documents. *See supra* ¶ 16.

is leased. Our statute taxes only amounts paid "for" the lease or rental of tangible personal property. Because the liability waiver fee does not affect the possession, use, or operation of the rental property, it is not subject to taxation under the plain language of section 59-12-103(1)(k).

*B. The Regulation's Use of "in Connection with" Impermissibly
Broadens the Statute*

¶21 We next determine whether the Commission's regulation is consistent with the authorizing statute. The administrative code implementing subsection 103(1)(k) requires a lessor to "compute sales or use tax on all amounts received or charged in connection with a lease or rental of tangible personal property," UTAH ADMIN. CODE R865-19S-32(1)(a), whereas the statute requires the collection of sales tax on "amounts paid or charged *for* leases or rentals of tangible personal property," UTAH CODE § 59-12-103(1)(k) (emphasis added).

¶22 This regulation represents the Commission's interpretation of the Code, and that interpretation must harmonize with the text of the statute. *Airport Hilton Ventures, Ltd. v. Utah State Tax Comm'n*, 1999 UT 26, ¶ 6, 976 P.2d 1197. "[W]e will uphold the Commission's rule only if, *inter alia*, it does not 'confer greater rights or disabilities' than the underlying statute." *Id.* ¶ 8 (citation omitted). Although we may defer to agency fact finding or discretionary decision making, we decide this case solely on pure questions of law and our review is therefore de novo. *Hughes Gen. Contractors, Inc. v. Utah Labor Comm'n*, 2014 UT 3, ¶ 25 n.4, 322 P.3d 712.

¶23 We conclude that the administrative regulation impermissibly broadens the language of the statute.[3] "In connection with" encompasses a wide variety of products and services that may be associated with the rental without actually being "for" the rental. While the liability waiver fee might well be included under the Commission's expansive interpretation, it is not paid "for" the purchase of tangible personal property and therefore is not subject to sales and use tax under the statute. As we have determined, while the liability waiver fee may be "derived from," "associated with," "related to," or paid "in connection with" the rental of tangible personal property, it does not affect the use, possession, or operation of tangible personal property and therefore does not fall under the plain language of the statute.

---

[3] While we need not formally hold the "in connection with" language invalid, it must be construed in the future consistent with our interpretation of the statute in this opinion.

## CONCLUSION

¶24 Because we conclude that Rent-A-Center's liability waiver fee is not "paid or charged for leases or rentals of tangible personal property," we reverse the Commission's decision.

———————————