**2019 UT App 33**

# THE UTAH COURT OF APPEALS

MUDDY BOYS, INC,
Petitioner,

*v.*

DEPARTMENT OF COMMERCE, DIVISION OF OCCUPATIONAL AND
PROFESSIONAL LICENSING,
Respondent.

Opinion
No. 20170938-CA
Filed March 7, 2019

Original Proceeding in this Court

David R. Nielson and Michael D. Lichfield,
Attorneys for Petitioner

Sean D. Reyes and Brent A. Burnett, Attorneys
for Respondent

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE APPLEBY
concurred.

HARRIS, Judge:

¶1     In this case, we are asked to decide whether a contractor who successfully defends itself in an administrative enforcement action brought against it by the Utah Division of Occupational and Professional Licensing (DOPL) may as the "prevailing party" recover attorney fees and costs from DOPL. *See* Utah Code Ann. § 58-55-503(5)(d) (LexisNexis 2016). In administrative decisions, DOPL and the Department of Commerce (the Department) each interpreted the governing statute as forbidding such fee awards. Muddy Boys, Inc. (Muddy Boys) challenges those decisions and, although we acknowledge that the statute is not entirely clear, we think the Department has the

better of the arguments. Accordingly, we decline to disturb the Department's decision.

BACKGROUND

¶2    Muddy Boys is a drywall contractor that on occasion subcontracted work to a then-licensed company known as ITY LLC (ITY1). Unbeknownst to Muddy Boys, ITY1 lost its contractor's license, and its principal formed a new company known as ITY of Texas LLC (ITY2), but the new company was unable to obtain a contractor's license. ITY2 nevertheless falsely assured Muddy Boys that it was licensed, and offered as proof a state certificate that resembled a license. Muddy Boys apparently fell for the ploy and, under the impression that ITY2 was licensed, continued to subcontract work to the new entity on multiple projects.

¶3    In November 2015, DOPL filed an administrative action against Muddy Boys, accusing it of hiring an unlicensed subcontractor on fifty-eight separate projects, which DOPL contended was a violation of Utah Code section 58-55-501(3), and asserting that Muddy Boys should be assessed a $2,000 fine for each violation, pursuant to Utah Code section 58-55-503(4)(h). In total, DOPL sought to impose a $116,000 fine on Muddy Boys, and also asked for an order placing Muddy Boys's contractor license on probation. As the proceeding progressed, DOPL took the position that these violations were strict liability offenses, and that it did not matter that Muddy Boys may have been unaware that it was hiring an unlicensed subcontractor. DOPL also took the position that Muddy Boys had committed similar offenses before, which increased the fine from $1,000 per occurrence to $2,000 per occurrence. *See* Utah Code Ann. § 58-55-503(4)(h) (LexisNexis 2016). Muddy Boys maintained that it had never committed any such violations in the past.

¶4    After substantial motion practice, Muddy Boys prevailed on both of these preliminary issues: (1) DOPL eventually conceded that it needed to prove that Muddy Boys intentionally,

knowingly, or recklessly hired an unlicensed subcontractor, and (2) the administrative law judge (ALJ) assigned to the case ruled that any violation in this case would be Muddy Boys's first. After these issues were decided, the case went to trial in November 2016 before the ALJ. Following several hours of testimony, the ALJ ordered a lunch recess and, upon returning from lunch, DOPL made a unilateral motion to dismiss the case with prejudice, which the ALJ granted. At the time, DOPL offered no reason for its motion, although Muddy Boys contends in its brief that DOPL made its motion because it "finally recognized that it could not prove recklessness."

¶5     Soon after the case was dismissed, Muddy Boys filed a motion before the ALJ, pursuant to a briefing schedule set by the ALJ, seeking to recover more than $80,000 of attorney fees and costs it incurred in defending against DOPL's action. In response, DOPL did not challenge the amount or reasonableness of the proposed fees, but opposed the motion on legal grounds, asserting that attorney fees were not recoverable at all under the relevant statute. In January 2017, after briefing was complete, Muddy Boys submitted the matter to the ALJ for decision. But the ALJ did not issue a decision on Muddy Boys's motion. Instead, more than five months later, in June 2017, the director of DOPL (the Director) issued a lengthy order denying Muddy Boys's motion on the ground that the applicable statute, which authorized "courts" to award fees, did not allow fee awards by administrative tribunals. *See* Utah Code Ann. § 58-55-503(5)(d) (LexisNexis 2016).

¶6     After the Director issued his decision, and concerned about whether DOPL had communicated ex parte with the ALJ about the motion and whether the ALJ had drafted (but not issued) a recommended decision, Muddy Boys on two separate occasions asked DOPL to produce copies of any communications it might have had with the ALJ about the motion. DOPL refused.

¶7     Muddy Boys appealed the Director's decision to the Department. In addition to appealing the merits of that decision,

Muddy Boys also asked the Department to address two peripheral issues: (a) whether the Director had a conflict of interest, based on the fact that his agency would have had to pay any fee award out of budgeted funds, such that the Director should not have rendered a substantive decision on its motion; and (b) whether DOPL should be compelled to produce any communications it may have had with the ALJ.

¶8 In November 2017, the Department issued an order affirming the Director's decision declining to award fees, but reached that conclusion on completely different grounds, determining that the attorney fees provision in question applied only to proceedings brought pursuant to subsection (5) of Utah Code section 58-55-503, and not to proceedings brought pursuant to subsection (4). In its order, the Department expressly "decline[d] to address" either of the peripheral issues Muddy Boys raised.

ISSUE AND STANDARD OF REVIEW

¶9 Muddy Boys asks us to review the Department's order, and argues that both the Department and the Director erred in concluding that the applicable statute, Utah Code section 58-55-503(5)(d), does not allow Muddy Boys to recover attorney fees and costs. A party's challenge to an administrative agency's analysis of a statute presents an issue of statutory interpretation that we review for correctness. *Cook v. Department of Commerce*, 2015 UT App 64, ¶ 12, 347 P.3d 5.[1]

_____

1. Muddy Boys also asks us to review the two peripheral issues that the Department declined to decide: (a) whether the Director had a conflict of interest that should have prevented him from issuing a decision on the merits of Muddy Boys's motion, and (b) whether DOPL should have been compelled to produce copies of any communications it had with the ALJ, including a

(continued…)

ANALYSIS

¶10 The main issue presented here is whether Muddy Boys is entitled to recover the attorney fees and costs it incurred in successfully defending against DOPL's administrative action. "In Utah, attorney fees are awardable only if authorized by statute or contract." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 17, 40 P.3d 1119 (quotation simplified). Muddy Boys asserts that it has a statutory entitlement to recover such fees and costs pursuant to the 2014 version of Utah Code section 58-55-503(5)(d),[2] which provides that, "[i]n an action brought to enforce the provisions of this section, the court shall award reasonable attorney fees and costs to the prevailing party." Utah Code Ann. § 58-55-503(5)(d) (LexisNexis 2016).

¶11 Section 503 is comprised of five subsections, each discussing different kinds of penalties, sanctions, and citations

---

(…continued)
copy of any un-issued draft order. Because we conclude that Muddy Boys was not entitled to recover attorney fees under the governing statute, we need not reach these issues.

2. In 2017, this statute was substantively amended, and the pertinent subsection was renumbered to Utah Code section 58-55-503(7)(d). Throughout this opinion, we cite the statute in effect at the time of the administrative proceedings, which both parties agree is the provision that applies in this case. We also note that the 2017 amendment contains language that is substantially different from the 2016 version of the statute, which language would have made Muddy Boys's arguments much more difficult. *See* Utah Code Ann. § 58-55-503(7)(d) (LexisNexis Supp. 2018) (stating that, "[i]n an action brought to collect a penalty" referenced in subsection (7)(a), which action must be brought in "district court" pursuant to subsection (7)(b), "the court shall award reasonable attorney fees and costs to the prevailing party").

that may be imposed for violations of other sections of title 58, part 55. *See id.* § 58-55-503. Relevant here, subsection (4), among other things, allows DOPL's director to issue administrative citations for certain violations. *Id.* § 58-55-503(4). Subsection (4) envisions administrative hearings regarding alleged violations, which hearings may be initiated either by DOPL, *id.* § 58-55-503(4)(a) (giving DOPL the option of requiring an alleged violator to "appear before an adjudicative proceeding" conducted under Utah's Administrative Procedures Act (UAPA)), or by the alleged violator, *id.* § 58-55-503(4)(b)(ii) (allowing any person receiving a citation to "contest the citation at a hearing conducted under" UAPA). Subsection (4)(h) authorizes DOPL's director to impose fines of "up to $1,000" for first violations, and "up to $2,000" for subsequent violations. *Id.* § 58-55-503(4)(h). Subsection (5) states:

> (a) A penalty imposed by the director under Subsection (4)(h) shall be deposited into the Commerce Service Account created by Section 13-1-2.

> (b) A penalty that is not paid may be collected by the director by either referring the matter to a collection agency or bringing an action in the district court of the county in which the person against whom the penalty is imposed resides or in the county where the office of the director is located.

> (c) A county attorney or the attorney general of the state is to provide legal assistance and advice to the director in any action to collect the penalty.

> (d) In an action brought to enforce the provisions of this section, the court shall award reasonable attorney fees and costs to the prevailing party.

*Id.* § 58-55-503(5). The question presented here is whether a party who prevailed in administrative proceedings initiated pursuant to subsection (4) is entitled to recover attorney fees under subsection (5)(d), or whether the attorney fees provision is more limited in scope.

¶12　The question presented is one of statutory interpretation, and when faced with such a question, "our primary goal is to evince the true intent and purpose of the Legislature." *State v. Stewart*, 2018 UT 24, ¶ 12 (quotation simplified). "The best evidence of the legislature's intent is the plain language of the statute itself." *Id.* (quotation simplified). "[A]bsent a contrary indication," we assume "that the legislature used each term advisedly according to its ordinary and usually accepted meaning." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863. "Wherever possible, we give effect to every word of a statute, avoiding any interpretation which renders parts or words in a statute inoperative or superfluous." *Stewart*, 2018 UT 24, ¶ 12 (quotation simplified). Additionally, we "presume that the expression of one term should be interpreted as the exclusion of another, and we seek to give effect to omissions in statutory language by presuming all omissions to be purposeful." *Id.* ¶ 13 (quotation simplified). However, individual words and subsections cannot be viewed in isolation, but rather must be "construed in connection with every other part or section so as to produce a harmonious whole." *Id.* (quotation simplified).

¶13　Interpreting the statute at issue, the Department and the Director each reached the same conclusion—that Muddy Boys was not entitled to attorney fees—but they reached that conclusion on different grounds. In concluding that the statute did not authorize recovery of fees incurred in defending actions before administrative tribunals, the Director focused on the statutory language stating that the "court" shall award fees, and determined that an administrative tribunal is not a court. The Department took a different tack, determining that the provision—despite its use of the term "section" and not

"subsection"—authorized fee awards only for actions brought pursuant to subsection (5), and not actions brought pursuant to subsection (4). As it must in order to prevail here, Muddy Boys takes issue with both approaches, asserting that neither is consonant with what it views as the plain meaning of the statutory language.

¶14    For the purposes of our analysis, we assume—without reaching the merits of the question—that the Department's analysis was incorrect, and that the legislature's use of the words "section" and "action" in the first clause of subsection (5)(d) signals an intent that the attorney fees provision could at least potentially apply to all "actions" brought pursuant to any of section 503's various subsections. Even if this is the case, however, Muddy Boys is entitled to recover attorney fees as the prevailing party only if the entity positioned to award them is a "court." *See* Utah Code Ann. § 58-55-503(5)(d) (authorizing "the court" to award attorney fees).

¶15    Muddy Boys correctly points out that it was the Director—and not the Department—that espoused the position, during the administrative proceedings, that administrative tribunals are not "courts," and that therefore, under subsection (5)(d), no party may recover attorney fees incurred in administrative proceedings (as opposed to court proceedings). Despite having already once passed on adopting that position, the Department now defends it, and argues that the legislature's use of the word "court" makes clear that no administrative agency is authorized to award attorney fees, even to the prevailing party. Muddy Boys disagrees, and argues that the term "court," as used in subsection (5)(d), is broad enough to encompass administrative tribunals.

¶16    As with any question of statutory interpretation, we begin here with an examination of the statutory text. The legislature used the word "court" to describe the entity that is authorized to award fees. Unfortunately, that term is not defined in the relevant statute. Had it been, the definition would have been

controlling. *See O'Hearon v. Hansen*, 2017 UT App 214, ¶ 24, 409 P.3d 85. Where a statutory term is undefined, we must endeavor to determine its plain and ordinary meaning. *See Stewart*, 2018 UT 24, ¶ 12. Dictionaries, other sections of the Utah Code,[3] judicial opinions, and treatises may be useful tools in this endeavor. *See John Kuhni & Sons Inc. v. Labor Comm'n*, 2018 UT App 6, ¶ 15, 414 P.3d 952 ("When the applicable statute contains no definition of a relevant term, we may look to case law to see if courts have provided a definition."); *O'Hearon*, 2017 UT App 214, ¶ 25 ("A starting point for a court's assessment of ordinary meaning is the dictionary." (quotation simplified)); *id.* ¶ 26 ("When a term is not defined within a particular section of the Utah Code, courts may also look to other sections of the Utah Code to see whether the same term is defined elsewhere."); *see also Summit Water Distribution Co. v. Utah State Tax Comm'n*, 2011 UT 43, ¶ 16, 259 P.3d 1055 (using a treatise to aid in interpreting constitutional language).

¶17 Muddy Boys points hopefully to certain dictionary definitions of "court," which it contends are broad enough to encompass both judicial courts and administrative

---

3. In this case, however, examination of other sections of the Utah Code is unhelpful, because we find conflicting definitions and uses of the term "court." On one occasion, in UAPA itself, the legislature uses the term in a way that makes clear that it was not intended to include administrative tribunals. *See* Utah Code Ann. § 63G-4-103(1)(b) (LexisNexis 2018) (defining "agency" as "a board, commission, department, division, officer, council, office, committee, bureau, or other administrative unit of this state," but specifically excluding "the Legislature, *the courts*, the governor, any political subdivision of the state" (emphasis added)). On another occasion, however, the legislature uses the term "court" in a much broader way that clearly includes administrative tribunals. *See id.* § 58-67b-117(2) (stating that "[a]ll courts shall take judicial notice of the Compact and the rules in any judicial or administrative proceeding").

tribunals. *See, e.g., Court,* Black's Law Dictionary (10th ed. 2014) (defining "court" as "[a] tribunal constituted to administer justice," or a "governmental body consisting of one or more judges who sit to adjudicate disputes"); *Court,* Merriam-Webster, https://www.merriam-webster.com/dictionary/court [https://perma.cc/S485-46CE] (defining "court" as "an official assembly for the transaction of judicial business" or "a place (such as a chamber) for the administration of justice" or "a judge or judges in session" or "an assembly or board with legislative or administrative powers"); *Court,* Bouvier's Law Dictionary (1934) (defining "court" as "[a] body in the government to which the public administration of justice is delegated").

¶18    But these are not the only definitions of the word "court." Some sources define the term by reference to its possession of inherent judicial powers. *See Baumgaertel v. Salt Lake County,* 560 P.2d 325, 327 (Utah 1977) (stating that "[t]he term 'court' connotes a governmental institution in which is vested the judicial power of the State"). For example, as has long been recognized, "the power to punish for contempts is inherent in all courts." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991) (quotation simplified). But administrative tribunals do not possess judicial power, including contempt power. *See, e.g., A-Z Int'l v. Phillips,* 179 F.3d 1187, 1192 n.5 (9th Cir. 1999) (stating that "only courts of law are empowered to punish contempt committed before an administrative tribunal," and that "most administrative agencies [have] not been vested with contempt powers"); 20 Am. Jur. 2d *Courts* § 1 (2019) (stating that "administrative agencies do not have the power to punish contempts"). Other sources relatedly define the term "courts" by reference to their placement within our governmental framework. Courts are part of the judicial branch of government, but "administrative agencies are part of the executive branch of government." *Barrett v. Tennessee Occupational Safety & Health Review Comm'n,* 284 S.W.3d 784, 789 (Tenn. 2009). These distinctions are especially relevant here, because the statute at issue acknowledges that DOPL—an administrative agency—may assess a fine in administrative proceedings, *see* Utah Code

Ann. § 58-55-503(4)(h), but that, due to the inability of administrative tribunals to issue binding judgments or punish contempts, any collection of unpaid fines or penalties must occur in district court, *see id.* § 58-55-503(5)(b).

¶19 Accordingly, we do not view this as a case in which we can easily glean the answer to our statutory interpretation question from dictionary definitions. *See GeoMetWatch Corp. v. Utah State Univ. Research Found.*, 2018 UT 50, ¶ 21, 428 P.3d 1064 ("The dictionary alone is often inadequate [in statutory interpretation] because different definitions may support different interpretations." (quotation simplified)). For assistance in choosing among the competing definitions of the term "court," we look to the specific context in which the term is used here, as well as to judicial opinions, both inside and outside Utah, that have directly grappled with—rather than merely mentioned the term in passing—the meaning of the word "court" in other contexts.

¶20 When examination of the term itself yields inconclusive results, examination of its context often can be helpful. *See Stewart*, 2018 UT 24, ¶ 13 (stating that individual words and subsections cannot be viewed in isolation, but rather must be "construed in connection with every other part or section so as to produce a harmonious whole" (quotation simplified)). In this instance, the term "court" is used in section 503 only in subsection (5), the subsection that discusses the debt-collection actions that are to be filed in district court. When describing the procedure used to establish that a licensee is in violation of a statute and whether a fine or penalty should be imposed, the legislature used the phrase "adjudicative proceeding conducted under" UAPA. Utah Code Ann. § 58-55-503(4). But when describing the procedure for collecting any imposed fines and penalties, the legislature stated that the director could bring "an action in the district court." *Id.* § 58-55-503(5)(b). And just two subsections later, it vested in the "court"—not the "director" or the "tribunal"—the authority to award reasonable attorney fees

and costs to the prevailing party. *Id.* § 58-55-503(5)(d).[4] As noted above, the use of the term "court" in this context is potentially significant, given that the proceeding discussed in subsection (5)(b)—one for collection of an unpaid fine or penalty—can be usefully held only in a court possessing judicial power.

¶21    In addition to the clues we can derive from the context in which the term "court" is used in section 503, we also are constrained by our supreme court's opinion in *Frito-Lay v. Utah Labor Commission*, 2009 UT 71, 222 P.3d 55. In that case, the court confronted the issue of whether the Utah Rules of Civil Procedure apply to administrative adjudications under UAPA, the same statute that governed the administrative proceedings in this case. At issue was a state constitutional provision that limited judicial rulemaking power to rules applicable to "'the courts of the state.'" *Id.* ¶ 17 (quoting Utah Const. art. VIII, § 4). The court determined that administrative tribunals were not "courts of the state," and therefore concluded that judicially created rules of procedure are not applicable to "administrative adjudications [unless] the governing statute or regulations so provide." *Id.* ¶ 18 (quotation simplified); *see also id.* ¶ 17 ("We are

---

4. Muddy Boys argues that the legislature's use of the word "court"—rather than "district court"—in subsection (5)(d) signals a more expansive use of the term "court." We are not persuaded. Given the close proximity between subsection (5)(b) and subsection (5)(d), it was not necessary for the Legislature to say "district court" in the second reference to the word "court." Indeed, it appears likely that the use of the single word "court" in subsection (5)(d) was meant as a shorthand reference to the immediately preceding phrase "district court" used in subsection (5)(b). This resort to shorthand references is something the legislature is known to do in other sections of the code. *See*, *e.g.*, *id.* § 63G-4-501 (using "district courts" in subsection (1)(a), and then "court" in three following subsections); *id.* § 63G-4-402 (using "district courts" in subsection (1)(a), and then "court" in subsequent subsections).

powerless to impose our court rules on proceedings outside of state and local courts."); *cf. Baumgaertel*, 560 P.2d at 327 (stating that "[t]he term 'court' connotes a governmental institution in which is vested the judicial power of the State").

¶22    The Utah Supreme Court's determination, in *Frito-Lay*, that administrative tribunals are not "courts" is a conclusion almost uniformly shared by courts in other jurisdictions and by legal commentators who have directly addressed the issue. Leading legal encyclopedias state it as a matter of hornbook law that "an administrative tribunal is not a court." *See* 16A Am. Jur. 2d *Constitutional Law* § 256 (2019); *see also* 73 C.J.S. *Public Administrative Law and Procedure* § 35 (2019) (stating that "administrative agencies are not courts, judges, judicial bodies, or officers, and their proceedings are not judicial"). And because of the inherent differences between courts and administrative agencies in terms of judicial power and governmental placement, almost all courts that have directly confronted the issue have rejected the broad definition offered here by Muddy Boys, and have concluded—in many different contexts—that the plain language meaning of the term "court" does not include administrative tribunals.

¶23    Important to this analysis is the fact that administrative agencies are part of the executive (and not the judicial) branch, and do not generally possess judicial power. *See, e.g.*, *Quinton v. General Motors Corp.*, 551 N.W.2d 677, 684–85 (Mich. 1996) (concluding that the doctrine of separation of powers is not violated when the legislature reopens or sets aside an order entered by an administrative tribunal because "[a]n administrative tribunal is not a court—it is not part of the judicial branch of government"); *State ex rel. Stenberg v. Murphy*, 527 N.W.2d 185, 193 (Neb. 1995) ("Although it is not always clear whether a state agency is part of the executive or legislative department, it is clear that a state agency is not part of the judicial department of government. Administrative agencies are not courts."). Federal courts have determined, for instance, that litigants cannot remove administrative proceedings to federal

court because the federal removal statute, 28 U.S.C. § 1441(a), only authorizes removal of cases pending in a "state court" and, using a plain language analysis, the term "state court" does not include administrative tribunals. *See Oregon Bureau of Labor & Indus. ex rel. Richardson v. United States W. Commc'ns, Inc.*, 288 F.3d 414, 418 (9th Cir. 2002) ("It is undisputed that [the Oregon Bureau of Labor and Industries] is *not* a court. . . . [It] is an administrative agency, albeit one that, like many others, conducts court-like adjudications."); *Smith v. Detroit Entm't, LLC*, 919 F. Supp. 2d 883, 886–87 (E.D. Mich. 2013) (using a plain language analysis to conclude that an administrative agency is not a "state court," and that therefore removal was not allowed). Similarly, courts have also determined, in other statutory contexts, that administrative tribunals do not fall within the ambit of the word "court." *See Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*, 646 F.3d 1258, 1278 (10th Cir. 2011) ("All but two of the more than thirty courts asked to rule that an administrative tribunal is a 'court' for the purposes of preclusion under the [Clean Air Act] or similar statutes have refused to do so." (quotation simplified)); *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1271 (9th Cir. 1994) (recognizing that the federal Anti-Injunction Act limits a "federal court's power to enjoin proceedings *in a State court*," but not "in any other entity of state government, such as a state administrative agency" (quotation simplified)); *Narey v. Dean*, 32 F.3d 1521, 1524–25 (11th Cir. 1994) (concluding that the *Rooker-Feldman* doctrine, which prohibits a federal district court from reviewing a final state court judgment, "applies only to state court decisions, not to state administrative decisions").

¶24 Muddy Boys resists the conclusion to which these authorities point by arguing that administrative tribunals must be "courts" because litigants—and even courts—sometimes colloquially refer to them as such. In support of its point, Muddy Boys refers us to certain instances in this case in which DOPL's counsel referred to the administrative tribunal as a "court" or addressed the administrative law judge as "your honor." Similarly, Muddy Boys directs our attention to a number of

unpublished cases in which courts, in passing and without analysis, sometimes refer to administrative tribunals as "courts." *See, e.g., Callister Nebeker & McCullough v. United States*, No. 2:14-CV-919-TC, 2015 WL 5918494, at *8 n.11 (D. Utah Oct. 9, 2015) ("The court assumes, without deciding, that an agency administrative court decision may be used to collaterally bar an issue raised in federal district court."); *In re Bryon D. Peterson*, No. 2:10-CV-741, 2011 WL 772664, at *1 (D. Utah Feb. 28, 2011) (referring in passing to "an Article I administrative court"); *Desai v. Panguitch Main St., Inc.*, No. 2:04-CV-691DAK-PMW, 2009 WL 54291, at *1 (D. Utah Jan. 8, 2009) (discussing a pending "administrative court decision"); *Peterson v. Provo City*, 2002 UT App 430U, para. 1 (referring to the finding of an administrative body as "the Provo administrative court's finding").

¶25   The manner in which citizens—or even judges—use words in common parlance can certainly play a role in evaluating the definition and interpretation of those words, especially where dictionary definitions fail to supply a conclusive definition. *See State v. Rasabout*, 2015 UT 72, ¶ 57, 356 P.3d 1258 (Lee, J., concurring) (urging courts to employ "corpus linguistics," a method of interpretation which involves "access[ing] large bodies of real-world language to see how particular words or phrases are actually used in written or spoken English"). But one of the chief benefits of a corpus-linguistics-style analysis is that it offers a systematic, non-random look at the way words are used across a large body of sources. *See id.* ¶ 84 (Lee, J., concurring) (suggesting that, if corpus linguistics principles are employed, large databases of language usage should be examined, rather than a small sampling, in order to guard against biased selection of sources).

¶26   Here, Muddy Boys offers us only a small, hand-picked sampling of offhand cultural uses of the word "court," and makes no effort to supply us with systematic corpus linguistics data on the topic. Certainly, the Department has not had a chance to respond to any such systematic analysis. And we are uncomfortable engaging any such analysis sua sponte. *See id.*

¶ 37 (Durrant, J., concurring) (stating that corpus linguistics analysis "may be a useful addition to our traditional methods of statutory construction," but that "it would be best employed by us, or by other judges, only after the parties have raised it and argued it"). In any event, we do not doubt that people sometimes casually refer to administrative tribunals as "courts." After all, those tribunals are often presided over by administrative law judges, to whom respect is owed, and are often asked to adjudicate important issues. But a few examples of this kind of in-passing usage are nowhere near enough to overcome near-unanimity among courts—including our own supreme court in *Frito-Lay*—that have actually considered the question of whether the word "court," in various statutory and constitutional contexts, was intended to include administrative tribunals.

¶27 Although we acknowledge that the statute is not entirely clear on this point, we conclude that the legislature, in this context, intended to use the term "court" in its narrower and more conventional sense: that "court" refers to the courts that are part of the judicial branch of government and that possess the full array of judicial power, including the power to issue binding orders and judgments and hold violators in contempt. Accordingly, even if the first clause of the attorney fees provision signals its application to potentially the entire section, only "courts"—and not administrative agencies—are empowered to make attorney fee awards.

CONCLUSION

¶28 We are not without sympathy to Muddy Boys's plight. The company was inaccurately accused of committing administrative violations, and threatened not only with sanctions against its contractor license but also with imposition of a six-figure fine. It required the expenditure of over $80,000 in attorney fees, and two significant pre-hearing rulings, for DOPL to realize that it could not and should not proceed with its case. If this were just a question of fairness, we would have no trouble

concluding that Muddy Boys should be entitled to recover its attorney fees so that it could be made whole.

¶29    But the question before us is not one of fairness. It is one of statutory interpretation. The statute upon which Muddy Boys rests its claim for attorney fees authorizes only "the court" to award attorney fees, and in this context we conclude that the legislature did not intend the term "court" to include administrative agencies. Accordingly, we decline to disturb the Department's conclusion that Muddy Boys is not entitled to recover the attorney fees it incurred in successfully defending itself against DOPL's administrative prosecution.

———————