2024 UT App 81

# THE UTAH COURT OF APPEALS

NORM C. MAYHEW,[1]
Petitioner,

*v.*

LABOR COMMISSION, DARRELL W. ANDERSON CONSTRUCTION INC.,
AND WORKERS' COMPENSATION FUND,
Respondents.

Opinion
No. 20220695-CA
Filed May 31, 2024

Original Proceeding in this Court

Michael Gary Belnap, Virginius Dabney,
and Stony V. Olsen, Attorneys for Petitioner

Michele L. Halstenrud and Hans Scheffler, Attorneys
for Respondents Darrell W. Anderson Construction
Inc. and Workers' Compensation Fund

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 More than fifteen years ago, Norm C. Mayhew was injured at work. In 2015, seven years after that accident, Mayhew filed a claim seeking workers' compensation benefits from his employer. Since filing his industrial accident claim, Mayhew has engaged in

---

1. Respondents notified the court that Mr. Mayhew passed away during the pendency of this appeal. We note that Utah Code section 34A-2-423 allows the personal representative of a deceased employee's estate to pursue a claim for compensation. Accordingly, we issue this opinion pursuant to rule 38 of the Utah Rules of Appellate Procedure as the decision may be determinative in any continued adjudication.

extensive efforts before an administrative law judge (the ALJ) and the Labor Commission Appeals Board (the Commission) to demonstrate that he is entitled to medical benefits and disability benefits because the industrial accident rendered him permanently unable to work. Mayhew petitioned for judicial review of the Commission's dismissal of his claim for permanent total disability benefits after it determined his claim was time-barred and he had obstructed the adjudicative process.

¶2 The relevant statute, section 34A-2-417 of the Utah Code, contains a twelve-year statute of repose under which claims are timely if, at the twelve-year mark from the date of the accident, the claimant "is able to" meet the burden of proving that compensation is due and "[he or she] is actively adjudicating issues of compensability before the commission." Because Mayhew was actively litigating at the twelve-year mark from the accident, the Commission erred by dismissing his claim under the statute of repose. As such, we determine that while Mayhew acted in a manner that was obstructive to the adjudicative process, this behavior occurred in a non-hearing setting, and thus the Commission did not have authority to dismiss Mayhew's claim as a sanction for the problematic conduct that occurred. We therefore remand Mayhew's case for further consideration.

BACKGROUND

¶3 In August 2008, Mayhew suffered a workplace accident while employed as a concrete setter for Darrell W. Anderson Construction Inc. (referred to collectively with its insurer, Workers' Compensation Fund, as Respondents). Mayhew was injured while "using a post driver to drive rebar for temporary fencing" and "he accidentally struck himself in the left foot with the post pounder, in an area beyond the steel toe of his boot." Respondents have paid certain medical benefits in connection with Mayhew's injury. Specifically, since the accident in 2008, Respondents have paid approximately $20,000 in temporary total

disability compensation benefits; approximately $6,000 in temporary partial disability compensation benefits; approximately $7,000 in permanent partial disability compensation benefits; and approximately $50,000 in medical expenses on behalf of Mayhew. Over time, however, the parties have disagreed about which injuries were caused by the accident, the extent of those injuries, the medical treatment necessary for those injuries, and Mayhew's entitlement to past temporary disability and permanent compensation benefits.

¶4 In March 2015, Mayhew filed his initial application for hearing seeking medical and temporary benefits and permanent total disability compensation benefits. After numerous hearing continuances and delays, in October 2015, Mayhew sent a letter to the ALJ requesting withdrawal of his permanent total disability claim, leave to amend his application to add claims for temporary total disability benefits and permanent partial disability benefits, and an additional continuance of the hearing scheduled for November 2015. In that letter, he asserted that his "claim for [permanent total disability] benefits [was] unripe because he [was] clearly not MMI."[2] But, as of December 29, 2015, "no amended application for hearing [had] been received from [Mayhew] as anticipated." The ALJ allowed Mayhew one extra month to file an amended application and notified him that a hearing would be scheduled based on the current application if nothing further was filed.

¶5 Mayhew filed an amended application in early 2016, which did not include a claim for permanent total disability benefits but instead sought temporary total disability and permanent partial disability benefits; however, this application noted that Mayhew was still "not MMI" and would "receive an impairment rating upon reaching MMI."

---

2. MMI means maximum medical improvement.

¶6 In November 2016, the ALJ held the first hearing on Mayhew's application to determine whether Mayhew's injuries were caused by the industrial accident, what treatment was necessary for his injuries, and whether he was entitled to medical benefits and past temporary benefits.

¶7 In April 2017, the ALJ issued interim findings, ordering that the medical aspects of Mayhew's claim be referred to a medical panel for further evaluation and that Mayhew obtain and file all radiology films with the ALJ on or before May 19, 2017, or else risk dismissal of his application. After Mayhew refused to participate in the medical panel "for some time" because of an upcoming surgery and did not file the requested diagnostics with the ALJ, the ALJ dismissed Mayhew's case without prejudice several months later.

¶8 The next day, Mayhew requested that the order of dismissal be set aside. In August 2017, after receiving assurances that Respondents were paying temporary compensation and certain medical expenses, the ALJ denied the request, ordering that Mayhew file another motion to set aside once his health condition stabilized.

¶9 Mayhew asked the ALJ to set aside the dismissal and continue the adjudication in July 2018 after he reached MMI status. Though Respondents had paid medical expenses for and indemnity benefits during Mayhew's recent surgery, the parties continued to argue about what benefits should be paid as a result of Mayhew's industrial accident. The ALJ set a formal hearing for February 2019, and the parties requested a continuance two weeks before that hearing to discuss settlement and to complete further discovery because the case had become more complex. The ALJ agreed to the requested continuance and rescheduled the hearing for seven months later but indicated she had little confidence that "more delay [would] help" and stated that she would "grant no other continuances" in the case.

¶10 Mayhew filed an amended application adding several medical conditions to his claim for medical and temporary benefits. In September 2019, a second hearing was held on those claims. The ALJ imposed various deadlines on the parties prior to the case proceeding to a medical panel. Mayhew submitted opinion letters from two doctors who opined that he suffers from complex regional pain syndrome (CRPS). Mayhew then filed a number of "arguments regarding medical panel issues," which the ALJ refused to consider on the basis that they were "extremely premature."

¶11 In March 2020, the ALJ issued an amended interim order, again referring the case to a medical panel for further evaluation due to conflicting medical opinions. In response to the amended interim order, Mayhew sent the ALJ an email asserting that certain medical records must be missing from the medical records exhibit. In reply, the ALJ issued an order outlining all medical records the court had received and permitting Mayhew to submit a response by late April 2020 with any proposed amendments to the medical exhibit. The ALJ cautioned that if there were no additional submissions, the medical exhibit would be closed and deemed completed.

¶12 In April 2020, Mayhew submitted a letter to the ALJ and asked her to consider it a motion to revise the medical record summary to fix alleged page-numbering issues and to include the opinion letters from his two doctors. Shortly thereafter, Respondents objected to the motion as untimely. The parties submitted several more motions to the ALJ over the disputed medical records. The ALJ issued a second amended order in June 2020, which partially incorporated the additional medical records and again referred the case to a medical panel for further evaluation.

¶13 While the case proceeded before the medical panel, Mayhew filed a motion requesting that the ALJ reconsider her

second amended order, and he alleged that the summary of the medical record presented "a grossly lop-sided view of the medical evidence" that confirmed "a strong and improper bias [of the ALJ] against" Mayhew, going so far as to allege that "the ALJ [was] neglecting her duty as an ALJ" by not including all of Mayhew's submitted medical evidence. In response, the ALJ issued an order in June 2020 stating that she would not rule on Mayhew's objections, which "appear[ed] to yet again request modification of the fact findings," "until the time of the issuance of the final order."

¶14 Mayhew then escalated the dispute to the Commission, and in a June 2020 email, he requested interlocutory review of the ALJ's findings of fact and interim order and her refusal to consider Mayhew's demands to add his opinion letters to the medical record and factual findings. In his motion for interlocutory review, Mayhew highlighted what he perceived to be all of the ALJ's "errors, mischaracterizations, failures[,] and actions," including her compilation of "a defective and incomplete medical record" and her appointment of an "unqualified" medical panel chair, among other grievances. Mayhew requested that another ALJ be appointed to handle the case—asserting that the ALJ had "intentionally" made errors or had "a faulty work ethic"—and that the new ALJ should be given specific instructions on how to appoint qualified, unbiased specialists to the medical panel.

¶15 Respondents filed a response to Mayhew's motion for interlocutory review, requesting that the Commission dismiss the motion: "Although [Mayhew] does not like [the ALJ's] decisions, he has not presented a single instance where [she] has abused her discretion or improperly managed the claim. [Mayhew's] request for interlocutory review is an effort to circumvent the adjudicative process and the ALJ's ability to manage this case."

¶16 Later that fall, the Commission dismissed Mayhew's motion for interlocutory review, stating that the Commission "has consistently declined to engage in interlocutory review when it diminishes and delays an ALJ's ability to manage and resolve a claim and when the issues raised in such motions can be resolved or rendered moot by subsequent events." Importantly, the Commission observed that it would "engage in interlocutory review *only* if the advantage of deciding the issues presented clearly outweigh[s] 'the interruption of the hearing process and the other costs of piecemeal review.'" (Emphasis added.) The Commission was "not convinced that the issues raised in [Mayhew's] motion require[d] immediate attention from the [Commission] or warrant[ed] interruption of the hearing process scheduled in this matter," and because the Commission determined that the ALJ's "fact-finding decisions [fell] within her discretion to manage the case," the Commission would "not usurp that authority through interlocutory review," especially when it was "clearly not warranted in this matter."

¶17 Shortly before the twelfth anniversary of his workplace accident, Mayhew renewed his claim for permanent total disability benefits and requested that this claim be joined with the earlier-filed medical and temporary benefits claim. But the ALJ denied this request, offering her view that joining the two claims would cause the medical and temporary benefits case to be further delayed.

¶18 Following the Commission's denial of Mayhew's request for interlocutory review, Mayhew proceeded to submit demands directly to the ALJ via email with regard to the medical and temporary benefits case. These demands included requests for specific information about the medical panelists' qualifications, which Respondents opposed, arguing that "no rule, statute, legal authority, or Commission precedent . . . supports [Mayhew's] request for information about" the medical panel chair and other members. In April 2021, a hearing was scheduled for September

2021. Mayhew sent an additional letter to the ALJ in July 2021, reiterating his earlier demands for information about the qualifications of the medical panel members. In August 2021, the ALJ denied Mayhew's request for information and explained her reasoning for doing so. The ALJ also warned Mayhew that his "failure to participate in the medical panel evaluation on an unripe objection to the medical panel members, any other unripe objection, or motions based on arguments that have long been denied in other cases, [would] result in dismissal of the case." The ALJ notified the parties on August 24 that the medical panel would evaluate Mayhew on August 31 via teleconference.

¶19 On August 30, 2021, Mayhew's counsel escalated his complaints *again*, this time emailing the Director of the Adjudication Division (the Director) a seven-page letter marked "confidential" and requesting once again that the ALJ "be removed from" Mayhew's case and "that she never be assigned to or continue any other case that" Mayhew's counsel was involved with in the future. The August 2021 letter heavily admonished the ALJ in what we perceive to be a personal attack, making accusations against her: "[S]he is a bad judge. . . . [S]he is slow, she is incompetent, she is lazy, and she is vindictive." The letter ended with a threat that Mayhew's counsel would write a letter to "the Governor and Mr. Mayhew's State Senator and State Representative and the media" if the ALJ was not immediately removed from Mayhew's case.

¶20 In reply, Respondents argued that Mayhew's attacks on the ALJ were "unsupported, inappropriate, and unprofessional," and asserted that Mayhew's counsel violated the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility, which require, among other things, that lawyers treat judges "in a courteous and dignified manner."

¶21 Following Respondents' filing, Mayhew's counsel sent *another* email to the Director. In this September 2021

communication, Mayhew's counsel expressed discontent at the dissemination to the ALJ and Respondents of his earlier letter marked "confidential" and once again attacked the ALJ's competence and demanded that she be removed from this case and all future cases associated with Mayhew's counsel: "I do not want her to ever be assigned to any case that I am involved in. She has a problem with me and *I most definitely have a problem with her*." (Emphasis added.) Mayhew's counsel underscored the ALJ's "antipathy," "laziness, vindictiveness, incompetence, and anti-injured worker approach," and accused her of doing "dirty work" for Respondents.

¶22    In September 2021, the ALJ canceled the scheduled hearing in the permanent total disability case. The ALJ construed Mayhew's counsel's letters as a motion to disqualify her, and she referred that motion to the Director for determination. In November 2021, the Director denied the motion based on Mayhew's failure to comply with the filing requirements outlined in rule 63 of the Utah Rules of Civil Procedure, which was deemed applicable because the Labor Commission had not enacted administrative rules to address disqualification of its arbiters. The Director also determined that Mayhew's allegations of bias, prejudice, and conflict of interest on the part of the ALJ had no merit. In addition, the Director concurred with Respondents that Mayhew's "motion lack[ed] civility and professionalism in its tone, assertions and language," and went into great detail concerning the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility. The Director stopped short of imposing sanctions but "encouraged" Mayhew's counsel to review these rules.

¶23    Subsequently, the ALJ issued a final order in December 2021, dismissing both Mayhew's medical and temporary disability benefits claim and his permanent total disability benefits claim with prejudice due to his and his counsel's "obstruction and refusal to participate in a medical panel" and on

the basis that, through "repeated neglectful and willful misbehavior," they "abused the adjudication process." In the order, the ALJ discussed contempt at length. While she acknowledged that "administrative law forums are not judicial courts, and administrative law judges in Utah do not have contempt powers," the ALJ found "it likely that [Mayhew] could be found in contempt in a judicial court for failing to . . . attend the medical panel evaluation." The ALJ also discussed abuse of process in great detail and determined that "[o]bjectively, the evidence shows [Mayhew] has abused the adjudication process in filing the Motion to Disqualify" her, because the motion "was not filed in good faith" and instead was "subterfuge used to ignore" the Commission's order and "launch a baseless but long-brewed personal attack against the ALJ."

¶24     Thereafter, Mayhew filed two separate motions for review before the Commission. First, he asked the Commission to review the ALJ's decision to dismiss his claim for medical and temporary benefits with prejudice, asserting that dismissal of an injured worker's case for failure to attend a medical panel evaluation is not an available sanction and that, rather, suspension of the claim until the exam can occur is the appropriate remedy. *See* Utah Code § 34A-2-602(2). Mayhew also asserted that the dismissal of this claim demonstrated the ALJ's bias and prejudice toward Mayhew's counsel.

¶25     Second, Mayhew filed a separate motion for review of the dismissal with prejudice of his permanent total disability benefits claim, arguing that the failure of the ALJ to hold a hearing was a "violation of due process." Mayhew also reiterated that his case should be assigned to a new ALJ.

¶26     Respondents filed a response requesting that the Commission affirm the ALJ's order dismissing Mayhew's claim for permanent total disability with prejudice. Respondents argued that the ALJ's dismissal was appropriate because "he

egregiously violated numerous orders from the ALJ and engaged in conduct that served no purpose but to disrupt the adjudicative process." Respondents also argued that because no hearing had been held on Mayhew's permanent total disability claim and the case was still in the discovery phase, the sanction of dismissal was permissible under rule 37 of the Utah Rules of Civil Procedure. In response to Mayhew's motion to review the dismissal of his claim for medical and temporary benefits, Respondents argued the ALJ has broad authority over the adjudication process, the ALJ appropriately dismissed Mayhew's permanent total disability benefits claim with prejudice, the ALJ did not abuse her discretion in not consolidating his two claims or in excluding his expert opinions, and any delay in the adjudicative process was the fault of Mayhew and his counsel.

¶27   In May 2022, the Commission issued an order modifying the ALJ's decision, wherein the Commission determined it could not dismiss Mayhew's claims on the basis of counsel's contemptuous behavior—although it very much would have liked to take such action—but affirmed the dismissal of Mayhew's disability compensation claims on a different ground, one not specifically discussed by the ALJ: it concluded that it did not have jurisdiction to award benefits because of "Mayhew's dilatory tactics in this case."

¶28   In particular, the Commission acknowledged in its order that Mayhew's counsel's letters to the Director were "replete with ad hominem attacks and unsubstantiated assertions against [the ALJ] regarding her competence and alleged bias against Mr. Mayhew's counsel." Further, the Commission "agree[d] with [the ALJ's] sentiment that counsel for Mr. Mayhew ha[d] exhibited behavior worthy of being held in contempt," going so far as to assert that "[i]n another forum, . . . *such behavior would be met with dismissal* of Mr. Mayhew's cases even without a finding of contempt." (Emphasis added.) The Commission conceded, however, that it was "not aware of any precedent for sanction or

dismissal in Commission proceedings based on violations of the standards of professional conduct" and sought "[g]uidance on this issue from the court on appeal," especially "given the severity of the behavior from Mr. Mayhew's side in this matter and their attempts to undermine the integrity of the Commission's process."

¶29 Regarding its jurisdiction to award benefits, the Commission determined that section 34A-2-417(2) of the Utah Code "may operate as a statute of repose," but even so, "a claim may be properly barred under its terms because it allows for adjudication of a claim to continue within a reasonable time beyond the 12-year period if an injured worker meets certain requirements and is either cooperating with a reemployment plan or actively adjudicating issues of compensability." Because Mayhew "purposefully delayed adjudication of his claim[s] on more than one occasion" by "engag[ing] in multiple evasive and dilatory tactics, including . . . failing to timely submit certain medical and diagnostic evidence[,] filing premature objections regarding the medical panel[,] . . . asking for a last-minute continuance of his hearing," and failing to appear before the medical panel via videoconference, the Commission determined that Mayhew had "willfully imped[ed] the active adjudication of compensability issues before the Commission." Accordingly, it concluded that Mayhew "has made it so he is not able to meet his burden of proving that he is due the disability compensation he claims within 12 years of the date of the accident, including the permanent total disability compensation claimed in [that] case."

¶30 Regarding Mayhew's claim for medical expenses, future medical care, and travel expenses, the Commission agreed that while suspension of those claims did not seem sufficient to remedy "his behavior and representation," "dismissal as a sanction is only applicable to Commission proceedings when a party fails to obey an ALJ's order regarding discovery." Accordingly, the Commission reversed the ALJ's dismissal and

ordered that Mayhew's claims for these benefits be suspended pending compliance with the medical panel examination.

¶31 Mayhew filed motions for reconsideration asking the Commission to address whether the medical panel needed to consist of specialists and, if so, to order that a new medical panel be appointed to review his medical benefits claim. In his motion for reconsideration of the dismissal of his permanent total disability claim, Mayhew argued that he had diligently and zealously pursued his claim for disability benefits and so the Commission's determination that he voluntarily suspended his claim by refusing to go to a medical panel evaluation was error. Respondents filed a response, requesting that the Commission affirm its order. The Commission denied Mayhew's requests for reconsideration and affirmed its previous decisions, stating that because the twelve-year statute of repose had expired while the ALJ was overseeing the adjudication of his medical and temporary benefits case and Mayhew "took steps to have his claim suspended by deliberately skipping the medical panel evaluation after confirming he would attend," Mayhew was not actively pursuing issues of compensability before the Labor Commission as required to prevent the dismissal of his disability compensation claims.

¶32 Mayhew now petitions for judicial review of the Commission's dismissal of his claim for permanent disability compensation benefits.

### ISSUES AND STANDARD OF REVIEW

¶33 We address two issues on appeal.[3] First, Mayhew asserts that the Commission misapplied Utah Code section 34A-2-417(2)

---

3. Mayhew presents an additional claim of error on appeal: that the Commission denied his right to due process by dismissing his

(continued…)

when it determined it lacked jurisdiction to award compensation because he was not actively adjudicating his permanent total disability benefits claim within the twelve-year time limit. Second, Respondents assert that we can affirm the dismissal of Mayhew's claim on the alternative basis that the Commission has statutory authority to adjudicate contempt. Both of these issues present questions of statutory interpretation, and the "Commission's interpretation of a statute is a question of law, which we review for correctness." *Massengale v. Labor Comm'n*, 2020 UT App 44, ¶ 4, 462 P.3d 417 (quotation simplified), *cert. denied*, 471 P.3d 168 (Utah 2020); *see also Muddy Boys, Inc. v. Department of Com.*, 2019 UT App 33, ¶ 9, 440 P.3d 741 ("A party's challenge to an administrative agency's analysis of a statute presents an issue of statutory interpretation that we review for correctness.").

ANALYSIS

## I. The Statute of Repose Does Not Deprive the Commission of Jurisdiction to Award Permanent Total Disability Benefits to Mayhew

¶34 Utah workers' compensation law has specific provisions setting forth the time limits for bringing claims. As relevant here, Utah law provides as follows:

> A claim . . . is barred, unless the employee . . . by no later than 12 years from the date of the accident, is able to meet the employee's burden of proving that the employee is due the compensation claimed under this chapter. . . . The commission may enter an order awarding or denying an employee's claim

---

permanent total disability claim without holding a hearing or following statutory procedures. But because of our resolution of the first two issues, we do not need to address Mayhew's due process claim.

for compensation under this chapter within a
reasonable time period beyond 12 years from the
date of the accident, if . . . *12 years from the date of the
accident* . . . the employee is *actively adjudicating*
issues of compensability before the commission.

Utah Code § 34A-2-417(2) (emphasis added).

¶35    The Commission concluded that under this statute,
Mayhew had not been actively adjudicating his permanent total
disability claim because he refused to attend the medical panel
exam and because Mayhew's counsel had engaged in other
contemptuous behavior. Thus, the Commission concluded that
this statute of repose barred Mayhew's claim.

¶36    But this interpretation of Utah Code section 34A-2-417(2)
does not comport with a plain-language reading of the statute.
Today, we answer the question left unresolved in *Massengale v.
Labor Commission*, 2020 UT App 44, 462 P.3d 417, *cert. denied*, 471
P.3d 168 (Utah 2020), namely, "whether the requirement that a
claimant be 'actively adjudicating issues of compensability' is
concerned only with a snapshot of what is happening at the
twelve-year mark" or, in the alternative, "whether it requires the
claimant to be continuously adjudicating the claim before and
after the twelve-year mark to preserve the Commission's ability
to consider the claim within a reasonable period beyond twelve
years." *Id.* ¶ 6 n.1 (quotation simplified).

¶37    Our interpretation of the statute is that the twelve-year
mark contemplates a "snapshot" in time. *Id.* Thus, at twelve years
from the date of his accident, Mayhew had to be able to meet his
burden of proving that he was due the compensation claimed. *See*
Utah Code § 34A-2-417(2)(a)(ii). And for the Commission to
award benefits within a reasonable time period beyond twelve
years from the date of the industrial accident, Mayhew had to
show that, at the twelve-year mark, he was "actively adjudicating

issues of compensability before the commission." *Id.* § 34A-2-417(2)(c).

¶38 In August 2020, at the twelve-year mark, Mayhew was taking actions (as described above) to actively adjudicate his compensation claim. He had just filed his new application for hearing on his permanent total disability claim and was litigating with Respondents about the medical records exhibit and the medical panel. We have no doubt that the statutory requirement of "active adjudication" was met as of August 28, 2020. And that is all the statute of repose requires.

¶39 We certainly do not condone Mayhew's counsel's combative behavior, which appears to have problematically escalated into personal attacks against the ALJ in August 2021. And we do not fault the ALJ for taking corrective action in response to the personal attacks levied against her. But based on the factual record listed above and our determination that the repose imposed by section 34A-2-417(2) is based on a snapshot in time—no later than twelve years from the date of the accident Mayhew must be able to prove that he is due the compensation claimed and be actively adjudicating issues of compensability—the Commission's conclusion that Mayhew was barred from pursuing his permanent total disability claim because of the actions he took in the months following the filing of that claim was error. In August 2020, when Mayhew filed his application for hearing, he was not at that time "willfully impeding the active adjudication of compensation issues before the Commission." He was waiting for notice of the date of the medical panel evaluation, no hearing had been scheduled in the permanent total disability case, and he had not yet skipped the scheduled videoconference examination with the medical panel. Therefore, the Commission's determination that it had no jurisdiction to consider whether Mayhew was entitled to permanent total disability benefits was erroneous.

## II. The Commission Has No Power to Punish the Contemptuous Actions Here

¶40　We decline to affirm the dismissal of Mayhew's permanent total disability claim on the alternative grounds offered by Respondents that the Commission has either inherent or statutory authority to dismiss Mayhew's claim as punishment for his (and his counsel's) particular contemptuous conduct.

¶41　"One often-declared difference between judicial and legislative power is that the former determines the rightfulness of acts done; the latter prescribes the rule for acts to be done. The one construes what has been; the other determines what shall be." *Interstate Com. Comm'n v. Brimson*, 155 U.S. 3, 9 (1894) (Brewer, J., dissenting). Separation of powers is a crucial part of our system of government and depends upon each branch respecting the other:

> The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, *except in the cases herein expressly directed or permitted*.

Utah Const. art. V, § 1 (emphasis added). In other words, powers that are not inherent to a particular branch must be expressly authorized.

¶42　Notably, a "court's contempt ruling can be grounded in either its inherent or statutory contempt power." *Rosser v. Rosser*, 2021 UT 71, ¶ 38, 502 P.3d 294. "It is undoubtedly true that courts of general and superior jurisdiction possess certain inherent powers not derived from any statute. Among these are the power to punish for contempt . . . ." *In re Evans*, 130 P. 217, 224 (Utah 1913). But this inherent power does not extend to legislatively

created bodies, such as the Commission. *See Muddy Boys, Inc. v. Department of Com.*, 2019 UT App 33, ¶ 18, 440 P.3d 741.

¶43     Instead, state legislatures must explicitly vest the power to adjudicate contempt with such bodies. *C.f. Marcus v. Workmen's Comp. Appeals Board*, 111 Cal. Rptr. 101, 103 (Cal. Ct. App. 1973) ("Labor Code section 134 confers upon the board the power to protect its integrity and dignity and to insure the orderliness of its proceedings through the use of the contempt power."); *Rushing v. Tennessee Crime Comm'n*, 117 S.W.2d 4, 8 (Tenn. 1938) ("[T]he Legislature of this State in more than one instance has conferred power upon boards and commissions to punish for contempt . . . . We find by reference to the decisions of other States that the power of the Legislature to authorize boards and commissions to punish for contempt has been sustained."). In other states where boards are not vested with such power, they must file a petition for contempt in a designated court, as the board cannot itself impose the sanction. *See, e.g.*, *Whitmer v. Hilton Casitas Homeowners Ass'n*, 425 P.3d 253, 257 (Ariz. Ct. App. 2018) ("[T]he statutory schemes governing several administrative bodies allow the superior court to act as a forum for such contempt proceedings."); *In re Rowan*, 694 A.2d 1002, 1005 (N.H. 1997). We therefore conclude that, here, neither the ALJ nor the Commission has inherent power to sanction litigants for contempt.

¶44     Respondents assert, however, that the ALJ and the Commission have *statutory* power to sanction litigants. And while the Commission did not dismiss Mayhew's permanent total disability claim based on Mayhew's counsel's bad behavior, Respondents argue that the dismissal can be upheld based on this alternative basis. They direct our attention to a provision of the Utah Administrative Procedures Act that allows an ALJ presiding over an adjudicative proceeding to take any "appropriate measures necessary to preserve the integrity of the hearing." Utah Code § 63G-4-206(2). Respondents assert that this section provides the Commission authority to sanction intemperate or

unprofessional behavior in a Commission proceeding. We note, as an initial matter, that the Commission itself did not consider that this statute provided authority to impose dismissal sanctions, stating that it was "not aware of any precedent for sanction or dismissal in Commission proceedings based on violations of the standards of professional conduct." And we agree with the Commission that this particular statute contemplates sanctions imposed only in the context of an adjudicative *hearing*, which is not the context presented here.

¶45 This case falls outside the hearing context; all of the contemptuous conduct on the part of Mayhew's counsel occurred through letters and filings, not during a hearing. In fact, as noted above, the ALJ canceled the hearing set for adjudication of Mayhew's permanent total disability claim in September 2021 and a hearing was never held. So, the Commission was limited to the lone statutory sanction listed for Mayhew's refusal to attend the medical panel examination and his counsel's obstreperous behavior: suspension of his medical expenses claim. *See id.* § 34A-2-602(2) (allowing suspension of a claim during the period an employee refuses to submit to or obstructs a medical examination). For this reason, we cannot affirm the dismissal of Mayhew's claim on the alternative ground offered by Respondents. Accordingly, because the section pointed to by Respondents applies only to *hearings* in formal adjudicative proceedings, and because Mayhew's permanent total disability case had not reached that point in the process, the Commission had no authority to dismiss the case as a sanction under this section as it is currently written.[4]

---

4. The Utah Legislature may want to consider broadening the power of the Commission and its officers to provide the specific authority to sanction as appropriate to preserve the integrity of an adjudicative proceeding generally.

CONCLUSION

¶46  For the reasons discussed above, the Commission erred when it determined that it did not have jurisdiction to award disability benefits to Mayhew. And we are unable to affirm on the alternative ground that the Commission has inherent or statutory authority to dismiss Mayhew's case as a sanction under the circumstances presented here. Thus, we reverse the dismissal and return the matter to the Commission to assess the validity of Mayhew's permanent total disability claim.

———————